## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **OPENTV, INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**PINTEREST, INC.,**<br><br>    **Defendant.** | **Court No. 1:24-cv-01301-JCG** |

## OPINION AND ORDER

[Denying Defendant's Motion for Partial Judgment on the Pleadings.]

Dated:  November 26, 2025

Anne Shea Gaza and Robert M. Vrana, Young, Conway, Stargatt & Taylor, LLP, of Wilmington, DE; Cyrus A. Morton and Benjamen C. Linden, Robins Kaplan LLP, of Minneapolis, MN; Travis K. Waller, Robins Kaplan LLP, of New York, N.Y.  Attorneys for Plaintiff OpenTV, Inc.

Karen Jacobs and E. Paul Steingraber, Morris, Nichols, Arsht, & Tunnel LLP, of Wilmington, DE; Matthias A. Kamber, Paul Hastings LLP, of San Francisco, CA; Joshua Yin, Paul Hastings LLP, of Palo Alto, CA; David M. Tennant, Jacob Rothenberg, and Charles Ziscovici, Paul Hastings LLP, of Washington, D.C.; Grace Wang, Paul Hastings LLP, of New York, N.Y.; Robert W. Unikel, Paul Hastings LLP, of Chicago, IL.  Attorneys for Defendant Pinterest, Inc.

Choe-Groves, Judge:  Plaintiff OpenTV, Inc. ("Plaintiff" or "OpenTV")

filed this case against Defendant Pinterest, Inc. ("Defendant" or "Pinterest")

alleging infringement of U.S. Patent Numbers 10,419,817 ("the '817 Patent"),

9,699,503 ("the '503 Patent"), 7,669,212 ("the '212 Patent"), and 7,055,169 ("the

'169 Patent").  Pl.'s First Am. Compl. Patent Infringement ("Am. Compl.") (D.I.

16); see U.S. Patent Number 10,419,817 ("'817 Patent") (D.I. 16-1); Patent

Number 9,699,503 ("'503 Patent") (D.I. 16-2); Patent Number 7,669,212 ("'212

Patent") (D.I. 16-3); Patent Number 7,055,169 ("'169 Patent") (D.I. 16-4).

Defendant filed Pinterest's Motion for Partial Judgment on the Pleadings.

Def.'s Mot. Partial J. on the Pleadings ("Def.'s Mot.") (D.I. 39); Def.'s Opening

Br. Supp. Mot. for J. on Pleadings ("Def.'s Br.") (D.I. 40).  Plaintiff opposed the

motion and Defendant filed its reply.  Pl.'s Answering Br. Opp'n Def.'s Mot. for

Partial J. on Pleadings ("Pl.'s Resp. Br.") (D.I. 45); Def.'s Reply Supp. Mot. for J.

on Pleadings ("Def.'s Reply Br.") (D.I. 49).

For the reasons discussed below, Pinterest's Motion for Partial Judgment on

the Pleadings is denied.

## BACKGROUND

OpenTV is a Delaware corporation that develops television and internet

content delivery technologies and complementary technologies, such as "personal

video recording [], video-on-demand [], television home networking, advanced

advertising methodologies, and tools for recommending content to viewers."  Am.

Compl. ¶¶ 5, 23–25.  The technologies offered by OpenTV include "software that

enables intuitive and personalized viewing experiences for consumers."  Id. at ¶ 25.

OpenTV was acquired by the Kudelski Group in 2007 and is a wholly

owned subsidiary of Kudelski Corporate, Inc., which is a wholly owned subsidiary

of Kudelski SA.  Id. at ¶ 27.  The Kudelski Group's business is focused on digital

media, and they specialize in "digital security and convergent media solutions for

the delivery of digital and interactive content" by providing technological

"solutions to manage, organize, enhance, market and secure digital content" in the

digital TV space.  Id. at ¶¶ 17–18.

OpenTV is the owner of all right, title, and interest in the Patents.  Id. at

¶ 96.  The '503 Patent, issued on July 4, 2017, and the '817 Patent, issued on

September 17, 2019, are each titled "Smart Playlist" (collectively, "Playlist

Patents").  '817 Patent; '593 Patent.  The '817 Patent claims priority to the '503

Patent.  '817 Patent at 1:3–7.  The Playlist Patents describe a system "to collect

information from a great number of viewers' client devices, determine a list of

popular content items based on the collected information, customize the list of

items based on the collected information, customize the list for a particular viewer,

and send the list to the viewer's device."  Id. at 2:11–15, Abstract; '503 Patent at

2:5–13, Abstract.

The '212 Patent, titled "Service Platform Suite Management System," was

issued on February 23, 2010.  '212 Patent.  The '212 Patent describes a "Service

Platform Suite, a method and apparatus for managing the presentation and

regulation of E-Commerce, content and service providers access in a distributed computer system." Id. at 2:40–43.

OpenTV alleges that Pinterest, Inc. is a Delaware corporation that acts as a "visual discovery engine for finding ideas." Am. Compl. at ¶¶ 33–34. Pinterest is a platform that individuals can access via website or phone application where users save and organize their ideas using images called "Pins." Id. at ¶¶ 34–35. Individuals create boards for topics of interest and organize their Pins there. Id. at ¶ 35. Pinterest developed a native video platform in or around 2016. Id. at ¶ 36. In September 2020, Pinterest launched "story pins" that allowed for the use of videos. Id. at ¶ 37. In or around the following year, Pinterest expanded the tools available to users and introduced video-first features. Id. at ¶ 37.

OpenTV filed a Complaint in November 2024, alleging infringement of the Patents and seeking monetary damages and injunctive relief. Compl. (D.I. 1). Pinterest filed a motion to dismiss OpenTV's Complaint, arguing that OpenTV failed to plausibly plead infringement of the Patents. Def.'s Mot. to Dismiss (D.I. 11); Def.'s Opening Br. Supp. Mot. to Dismiss (D.I. 12). An Amended Complaint was filed on February 18, 2025. Am. Compl. Pinterest withdrew its First Motion to Dismiss and filed its Second Motion to Dismiss on March 18, 2025, arguing that the '817 Patent, '503 Patent, and '212 Patent (collectively, "the Patents") were ineligible for patent protection under 35 U.S.C. § 101. Stipulation & Proposed

Order Withdraw Mot. to Dismiss & Extend Time (D.I. 18); Def.'s Partial Mot. to

Dismiss (D.I. 19); Def.'s Opening Br. Supp. Mot. to Dismiss (D.I. 20).  On July

16, 2025, the Court dismissed Pinterest's Second Motion to Dismiss, concluding

that, pursuant to Fed. R. Civ. P. 12(g)(2), Pinterest waived its ability to challenge

patent eligibility by not raising the defense in its First Motion to Dismiss.  Opinion

and Order (July 16, 2025) (D.I. 35).  Pinterest filed its Motion for Partial Judgment

on the Pleadings on August 13, 2025, arguing that the '817 Patent, '503 Patent, and

'212 Patent are ineligible for patent protection under 35 U.S.C. § 101.  Def.'s Mot.;

Def's Br.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which

grant the Court jurisdiction over civil actions relating to patents, plant variety

protection, copyrights, and trademarks.  28 U.S.C. §§ 1331, 1338.  Federal Rule of

Civil Procedure 12(c) permits a party to move for judgment on the pleadings after

the pleadings are closed, but early enough to not delay trial.  Fed. R. Civ. P. 12(c).

In considering a motion for judgment on the pleadings, the Court "must accept the

truth of all factual allegations in the complaint and must draw all reasonable

inferences in favor of the non-movant."  Revell v. Port Auth. of New York & New

Jersey, 598 F.3d 128, 134 (3d Cir. 2010) (citing Gross v. German Found. Indus.

Initiative, 549 F.3d 605, 610 (3d Cir. 2008)).  Generally, the purpose of a judgment

on the pleadings is "to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." Venetec Int'l, Inc. v. Nexus Med., LLC, 541 F. Supp. 2d 612, 617 (D. Del. 2008). A motion for judgment on the pleadings can be granted "only if no relief could be granted under any set of facts that could be proved." Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394–95 (3d Cir. 1991)).

Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts. See Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018); Berkheimer v. HP Inc., 881 F.3d 1360, 1364–65 (Fed. Cir. 2018). Disputes over eligibility can be resolved on a Rule 12(b)(6) or Rule 12(c) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC, 874 F.3d 1329, 1341 (Fed. Cir. 2017); RecogniCorp, LLC v. Nintendo Co., 855 F.3d 1322, 1328 (Fed. Cir. 2017); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1098 (Fed. Cir. 2016); Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369,

1380 (Fed. Cir. 2016); <u>Ultramercial, Inc. v. Hulu, LLC</u> ("<u>Ultramercial</u>"), 772 F.3d

709, 717 (Fed. Cir. 2014)).

## DISCUSSION

Pinterest moves for judgment on the pleadings for Counts I, II, and III of

OpenTV's Amended Complaint, which allege infringement of the '503 Patent,

'817 Patent, and '212 Patent respectively, arguing that the Patents are ineligible for

patent protection under 35 U.S.C. § 101.  Def.'s Mot.; Def.'s Br.

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof."  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  <u>Alice</u>

<u>Corp. Pty. Ltd. v. CLS Bank Int'l</u> ("<u>Alice</u>"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  <u>Mayo Collaborative Servs. v. Prometheus Labs., Inc.</u>

("<u>Mayo</u>"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  <u>Simio, LLC v. FlexSim Software Prods., Inc.</u>, 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

In <u>Alice</u>, the U.S. Supreme Court reaffirmed the two-step framework set

forth in <u>Mayo</u>, for distinguishing patents that claim ineligible subject matter from

those that claim patent-eligible applications of those concepts.  <u>Alice</u>, 573 U.S. at 217.

In step one, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea.  <u>Id.</u>  The court examines the focus of the claim and its character as a whole.  <u>SAP Am., Inc. v. InvestPic, LLC</u>, 898 F.3d 1161, 1167 (Fed. Cir. 2018).  Courts must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  <u>Finjan, Inc. v. Blue Coat Sys., Inc.</u> ("<u>Finjan</u>"), 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting <u>Enfish, LLC v. Microsoft Corp.</u> ("<u>Enfish</u>"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court then turns to step two to examine "the elements of each claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  <u>Alice</u>, 573 U.S. at 217–18 (internal quotations omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." <u>Id.</u> at 221 (internal quotations omitted).  Such "additional features" are not enough

to constitute an inventive concept if they are "well-understood, routine, conventional activities." Id. at 225.  To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

## I.    The '212 Patent (Advertising Patent)

### A.    Representative Claim

Pinterest contends that the Court should treat Claim 44 as representative of dependent Claims 2–22, 24–43, 45–64, and non-asserted Claims 1 and 23 of the '212 Patent for purposes of determining patent eligibility.  Def.'s Br. at 15–16. Defendant argues that the other '212 Patent claims are directed to the same abstract idea of targeted advertising and add only generic components for executing the process.  Id.  OpenTV counters that the dependent claims "add additional specificity and improvements" to the claimed inventions.  Pl.'s Resp. Br. at 12–13.

A court may limit its analysis of a 35 U.S.C. § 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted). Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not

found in the representative claim or if the parties agree to treat a claim as representative." See Berkheimer, 881 F.3d at 1365 (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept. Mobile Acuity, 110 F.4th at 1290 (citation omitted). If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group. Id. If the patent owner cannot make a non-frivolous argument against treating the identified claim as representative, it is precluded from arguing the eligibility of the other claims in the group. Id. (citations omitted).

Claim 44 of the '212 Patent recites:

A service platform for use in an interactive television system, the service platform comprising:

an advertising manager, and
a delivery manager;
wherein the advertising manager is configured to:
> access a campaign rule, wherein the campaign rule specifies which one or more advertisements of a plurality of advertisements are to be delivered to a target, said target comprising at least one client device;
> based on the campaign rule, select one or more advertisements for delivery to the target;
> send the selected one or more advertisements to the delivery manager for delivery to the client device;

> apply one or more rules to a client device user response to the
>    selected one or more advertisements to predict further user
>    interests;
>
> generate a new campaign rule based on the predicted further user
>    interests;
>
> based on the new campaign rule, select a new advertisement to
>    be delivered to the target; and
>
> trigger the delivery manager to include the new advertisement in
>    the one or more advertisements for delivery to the target.

'212 Patent at 35:25–47.  OpenTV's Amended Complaint alleges that Pinterest

infringed one or more of the claims of the '212 Patent, but discusses only Claim

44.  Am. Compl. ¶¶ 238–274.

As the party challenging the '212 Patent, Pinterest has the initial burden to

make a prima facie showing that the claims are "substantially similar and linked to

the same" allegedly abstract concept of targeted advertising.  Mobile Acuity, 110

F.4th at 1290.  The '212 Patent includes sixty-four claims, with three independent

claims: method Claim 1, and apparatus Claims 23 and 44.  '212 Patent at 32:25–

48; 33:49–34:4; 35:25–47.  Pinterest contends that the independent claims are

"materially the same" as Claim 44 but add generic components to execute basic

processes such as a computer, a rule generating component on a server, and a

business filter at the client.  Def.'s Br. at 4, 15.  With regard to the remaining

dependent claims, Pinterest contends that they add minor structural or functional

features, none of which are specific or inventive.  Def.'s Br. at 15–16.  In support

of this position, Pinterest provides a breakdown of the dependent claims, grouping

the claims by the feature or function they add and stating that the lack of specificity fails to transform the abstract idea alleged into an inventive concept. Id. Pinterest argues that Claims 2, 24, and 45 store user profile information in a database for interest prediction, which is abstract and not inventive absent further specificity. Id.; compare '212 Patent at 35:25–47 with '212 Patent at 32:49–55; 34:5–18; 35:48–60. Pinterest avers that Claims 3–4, 6–8, 20, 22, 25–27, 29–31, 47–48, 50–52, and 64 describe using different types of data to select an advertisement, while Claims 14, 37, and 58 describe measuring data such as click or purchase rates, but none of these claims specify how to use the data or improve computer functionality in a manner that transforms the abstract idea into an inventive concept. Def.'s Br. at 15; compare '212 Patent at 35:25–47 with '212 Patent at 32:56–61; 35:65–33:9; 33:23–25; 33:41–42; 33:47–48; 34:19–30; 34:35–49; 35:1–3; 36:1–7; 36:11–24; 36:42–44; 36:61–63. Pinterest states that Claims 5, 10–11, 28, 33–34, 49, and 54–55 add sending a "delivery plan," "product catalog," or "business filter" to the client, which are neither specific nor inventive. Def.'s Br. at 16; compare '212 Patent at 35:25–47 with '212 Patent at 32:62–64; 33:12–16; 34:31–34; 34:53–59; 36:8–10; 36:28–33. Pinterest asserts that Claims 9, 13, 32, 36, 53, and 57 add unspecified processing or generating a report of the user response. Def.'s Br. at 16; compare '212 Patent at 35:25–47 with '212 Patent at 33:10–11; 33:19–22; 34:50–52; 34:63–67; 36:25–27; 36:37–40. Pinterest contends that Claims 12, 15,

35, 38, 56, and 59 describe the client device as a "gadget" that measures the response or renders advertisements, and that this is a generic computer component performing basic functions. Def.'s Br. at 16; compare '212 Patent at 35:25–47 with '212 Patent at 33:17–18; 33:26–28; 34:60–62; 35:4–7; 36:34–36; 36:44–46. Pinterest argues that Claims 16, 39, and 60 recite a simulation that attempts to determine the timing of an ad campaign but does not specify how such a simulation occurs. Def.'s Br. at 16; compare '212 Patent at 35:25–47 with '212 Patent at 33:29–32; 35:8–12; 36:47–50. Pinterest avers that Claims 17–19, 40–42, and 61–63 specify that the advertisements include video, audio, or games, but none transform the abstract idea. Def.'s Br. at 16; compare '212 Patent at 35:25–47 with '212 Patent at 33:33–40; 35:13–20; 36:51–56. Pinterest states that Claims 21, 43, and 46 use rules and measurements to predict user interests, but fail to specify the rules or measurements. Def.'s Br at 16; compare '212 Patent at 35:25–47 with '212 Patent at 33:43–46; 35:21–24; 35:61–65.

OpenTV contends that the dependent claims add "additional specificity and improvements to the claimed inventions." Pl.'s Resp. Br. at 12–13. For example, OpenTV states that dependent Claims 2, 24, 45, and 58–59 add elements that further limit how new campaign rules, as mentioned in Claim 44, are generated and thus do not claim the abstract idea of targeted advertising. Id. Pinterest argues that the dependent claims neither improve the generic computer technology used to

perform the basic functions claimed, nor specify how the desired result is achieved. Def.'s Br. at 15–16.

The Court observes that the dependent claims describe using generic computers to perform the functions of advertising through the receiving, storing, measuring, organizing, searching, and providing of data and the selection of various advertisements. '212 Patent at 32:25–36:65. These functions are substantially similar to the service platform described in Claim 44, which includes selecting and delivering advertisements based on predicted user interests. Id. at 35:25–47.

The Court holds that Pinterest has made a prima facie showing that the remaining patent claims are "substantially similar to the same and linked to the same" allegedly abstract concept of targeted advertising. Mobile Acuity, 110 F.4th at 1290.

The burden now shifts to OpenTV to present a non-frivolous argument for why the eligibility of Claim 44 cannot be treated as representative of all claims. Id. OpenTV does not address Pinterest's contention that Claims 1 and 23 are materially the same as Claim 44. Pl.'s Resp. Br. at 12–13. Although OpenTV argues that the physical components and functional requirements recited in the dependent claims constitute patent-eligible subject matter, OpenTV has not articulated a meaningful argument for why the claims should be differentiated from

Claim 44 for purposes of determining eligibility.  Merely providing examples of

physical components does not demonstrate why those claims are not "substantially

similar" to Claim 44 or do not relate to the same allegedly patent-ineligible concept

such that they require a separate eligibility analysis.  See Mobile Acuity, 110 F.4th

at 1290.  The Court notes further that OpenTV's Amended Complaint does not

address any of the '212 Patent's claims other than Claim 44.  See Am. Compl.

Accordingly, the Court will consider Claim 44 of the '212 Patent as representative

of the other '212 Patent claims.

### B.    <u>Alice</u> Step One

Pinterest argues that Claim 44 of the '212 Patent is directed to the abstract

concept of rule-based targeted advertising and recites only general rules for

selecting advertisements and predicting interests.  Def.'s Br. at 7–10.  Pinterest

avers that Claim 44 does not specify how the claimed result is achieved, provides

no improvement to computer functionality, and recites no new computer

component or hardware.  Id. at 11–12.

OpenTV contends that Claim 44 of the '212 Patent is not directed to targeted

advertising but is an "improved technical approach to implementing adaptive

advertising in a computing environment in response to technical shortcomings in

the art."  Pl.'s Resp. Br. at 6 (citing '212 Patent at 2:28–36).  OpenTV argues that

the predictive technology and adaptive nature of the advertising manager respond

to a "need for an architecture that provides a comprehensive management solution for regulation of content, advertising and E-Commerce . . . [and the] need for a comprehensive architecture that provides adaptive control of access, content and scheduling in an interactive television environment." Id. at 7 (citing '212 Patent at 2:28–31).

Step one of the Alice analysis requires the Court to "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. Alice, 573 U.S. at 218. The Court considers the claim's "character as a whole." Enfish, 822 F.3d at 1335. Eligible patent claims must "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." McRO, Inc. v. Bandai Namco Games Am., Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing Enfish, 822 F.3d at 1336). The claims must do more than break down and organize the steps that humans regularly go through in their minds when performing tasks. See In re Jobin, 811 Fed. App'x 633, 637 (Fed. Cir. 2020).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has held repeatedly that targeted advertising, in which content recommendations or the manner in which information is presented are based on a user's prior use history, is an abstract concept. See Broadband iTV, Inc. v. Amazon.com, Inc. ("Broadband"), 113 F.4th 1359, 1371–72 (Fed. Cir. 2024) (concluding that a

method for maintaining an electronic program guide database and a usage history

database to generate viewer-individualized electronic program guides was

"directed to the abstract idea of collecting and using viewing history data to

recommend categories of video content."); Free Stream Media Corp. v. Alphonso

Inc., 996 F.3d 1355, 1362–65 (Fed. Cir. 2021) (concluding that claims that gather

information on a television viewer's history to match with other content and send

that content to the viewer were directed to the abstract idea of targeted

advertising); Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d

1363, 1369–70 (Fed. Cir. 2015) (concluding that claims directed to tailoring

television advertisements to the time of day were abstract).  As the CAFC has

observed, information tailoring is "a fundamental . . . practice long prevalent in our

system . . . ."  Intellectual Ventures I LLC, 792 F.3d at 1369 (quoting Alice, 573

U.S. at 219).

Claims that are merely directed to an abstract idea and applied with generic,

conventional computer components have been held consistently to be patent

ineligible. See id. at 1367–69 (claims adding generic computer components to

financial budgeting); OIP Techs. Inc. v. Amazon.com, Inc, 788 F.3d 1359, 1362–

64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using

conventional computer activities); Ultramercial, 772 F.3d at 714–17 (claims

applying an exchange of advertising for copyrighted content to the internet);

buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims

adding generic computer functionality to the formation of guaranteed contractual

relationships).

      The limitations of Claim 44 are similar to the claims of Ultramercial, where

the CAFC determined that "[a]lthough certain additional limitations [. . .] add a

degree of particularity, the concept embodied by the majority of the limitations

describes only the abstract idea of showing an advertisement before delivering free

content." Ultramercial, 772 F.3d at 715. The results of Claim 44 overall are

directed to improving the abstract concept of using a computer to deliver targeted

advertisements to a user. This is analogous to those concepts that have previously

been deemed abstract.

      OpenTV argues that the predictive technology and the adaptive nature of the

advertising manager to generate campaign rules are features that render the claim

to be not abstract. Pl.'s Resp. Br. at 6–8 (citing Int. Business Machines Corp. v.

Zynga Inc., C.A. No. 22-590-GBW, 2024 WL 3967402, at *5 (D. Del. Aug. 28,

2024); Attentive Mobile Inc. v. 317 Labs, Inc., C.A. No. 22-1163-CJB, 2023 WL

6215825, at *5 (D. Del. Sept. 25, 2023)). In the cases cited by Plaintiff, the courts

held that claims involving targeted advertising were patent-eligible at Alice step

one because they were directed ultimately to systems that improved the overall

capacity and function of the network system. See Int. Business Machines Corp.,

2024 WL 3967402, at *3–5 (holding that claims for structured advertising were directed at improving the functional capacity of computer systems by offloading processing and storage to lower the functional load on the host computer and prioritize its primary functions); <u>Attentive Mobile Inc.</u>, 2023 WL 6215825, at *5 (holding that claims involving targeted advertising were directed at a method of custom-generated deeplinking that improved how mobile electronic devices enroll customers in promotions).  The features OpenTV addresses may be an improvement over traditional methods of selecting advertisements.  However, to determine whether claims are directed to a patent-eligible improvement to computer functionality, the inquiry "often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are merely invoked as a tool.'" <u>Finjan</u>, 879 F.3d at 1303 (quoting <u>Enfish</u>, 822 F.3d at 1335–36). Claim 44 is not directed to a specific improvement in computer functionality, but addresses a problem in advertising and aims to improve the abstract idea of delivering targeted advertisements to users by using a computer as a tool.  See also <u>Synopsys, Inc. v. Mentor Graphics Corp.</u>, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a new abstract idea is still an abstract idea."); <u>Customedia Techs, LLC v. Dish Network Corp.</u>, 951 F.3d 1359, 1362-65 (Fed. Cir. 2020) (concluding that claims that recited reserving memory to ensure storage space was available for

advertising data were "at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool" rather than an improvement in computer functionality).

The Court concludes that representative Claim 44 of the '212 Patent is directed to the abstract idea of targeted advertising. The Court now turns to step two of the <u>Alice</u> analysis.

## C.    <u>Alice</u> Step Two

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." <u>Alice</u>, 573 U.S. at 217; <u>see also</u> <u>Mayo</u>, 566 U.S. at 73 (explaining that steps of the claim must amount to more than "well-understood, routine, conventional activity.").

Pinterest argues that Claim 44 does not recite a technological advance but uses only uses generic computer components and technology, such as the advertising manager and the delivery manager, to access data, generate and apply rules, and select advertisements for delivery. Def.'s Br.at 13–14.

OpenTV asserts that there is a factual dispute regarding whether the claimed service platform and the configuration of an advertising manager to make predictive selections based on user responses was well-understood, routine, or conventional. Pl.'s Resp. Br. at 11–12.

The '212 Patent describes a "Service Platform Suite, a method and apparatus for managing the presentation and regulation of E-Commerce, content and service providers access in a distributed computer system." '212 Patent at 2:40–43. The technology "operates in an interactive television environment comprising interactions between a server, a client, and a service provider, where the client is a viewer, a consumer or purchaser, the service provider is the vendor, and the server facilitates the interaction between the client and the service provider." Id. at 2:44–49. The technology purports to solve the technical problem of the "need for an architecture that provides a comprehensive management solution for regulation of content, advertising, and E-Commerce" and the "need for a comprehensive architecture that provides adaptive control of access, content, and scheduling in an interactive television environment." Id. at 2:28–34. The '212 Patent includes an "Advertise Architecture," that works across "four tiers of a broadcast platform." Id. at 25:64–66.

The first tier, called the "Management Tier," uses a Web Application Server to store data from sales representatives of various ad entities in an Advertisement Database. Id. at 25:64–26:4. The second tier, the "Scheduling Tier," includes the Head-End Schedule (HES) and ITV Content Delivery Server. Id. at 26:32–34. It receives ad data, such as viewer numbers and sold ad slots, and the HES generates a delivery plan, which is saved in the Advertisement Database. Id. at 26:34–42.

This information is used to generate a list of ads for the application to display next, with each ad weighted and prioritized based on factors such as targeting criteria. Id. at 26:42–46. The third tier, called the "Broadcast Tier," uses an Advertisement Insertion Engine to place ads in various forms, such as video or audio, directly into a content stream. Id. at 27:15–32. This tier regularly requests ads and inserts them into ad-enabled applications by either replacing or overlaying current visuals or audio. Id. Ads are also rotated and delivered to viewers in real time. Id. at 27:27–29. The fourth tier, the "Client Tier," includes the Ad Gadget Kit, Target, and Measure. Id. at 27:64–67. Ads are sent to the Target, which selects those matching the viewer's profile. Id. at 27:67–28:2. Selected advertisements are delivered to the Ad Gadget Kit, which displays rotating, clickable ads to the viewer. Id. at 28:2–5. When a viewer interacts with an ad, Measure tracks this activity and reports relevant data back to the Advertisement Database. Id. at 28:5–13. The system can also replace part or all of the viewer's current video or audio with a full commercial if a viewer clicks on a banner ad or requests more information. Id. at 27:60–64. The Ad Gadget does this by swapping in the new content directly on the viewer's device. Id.

Claim 44 recites a service platform comprising an advertising manager and a delivery manager, with a "wherein" limitation that describes the configuration of the advertising manager in seven steps. The steps include: (1) accessing a

campaign rule that specifies which advertisements should be sent to the target device; (2) selecting the advertisement(s) for delivery; (3) sending the advertisement(s) to the delivery manager; (4) applying a rule to the user of the client device to predict further interests; (5) generating a new rule based on the predicted interests; (6) selecting more advertisements for delivery; and (7) adding the new advertisement(s) to the delivery manager for delivery to the target. <u>Id.</u> at 35:25–47.

The Amended Complaint alleges that the advertising architecture is a "novel structure." Am. Compl. at ¶ 109. At this stage of the case, accepting OpenTV's factual allegations as true and drawing all reasonable inferences in OpenTV's favor, it is plausible that the advertising manager disclosed in Claim 44 is a non-generic component that supplies an inventive concept and transforms Claim 44 beyond the abstract idea of targeted advertising. <u>Revell</u>, 598 F.3d at 134 (citing <u>Gross</u>, 549 F.3d at 610). Moreover, whether the advertising manager is a well-understood, routine, or conventional component is the kind of fact issue that requires further inquiry and discovery before the Court can determine whether there is an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." <u>BSG Tech LLC. v. Buyseasons, Inc.</u>, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting <u>Alice</u>, 573 U.S. at 218). Although Defendant avers that "no factual

dispute precludes a decision," Defendant does not explain why the alleged novelty of the advertising architecture is irrelevant to the § 101 analysis, or why a judgment in its favor should be granted because "no relief could be granted under any set of facts that could be proved." Turbe, 938 F.2d at 428 (citing Unger, 928 F.2d at 1394–95).

The Court concludes that judgment on the pleadings is improper due to the underlying factual questions related to the § 101 inquiry, viewing the factual allegations in the Amended Complaint as true, and drawing all reasonable inferences in OpenTV's favor at this stage of the proceedings. Accordingly, Defendant's Motion for Partial Judgment on the Pleadings is denied with regard to the '212 Patent.

## II.    The '503 and '817 Patents ("Playlist Patents")

Pinterest argues that the claims of the Playlist Patents are directed to the abstract idea of manipulating data to create a playlist and lack any specificity or improvement to computer functionality that transforms the claims into an inventive concept. Def.'s Br. at 17–20. OpenTV responds that the Playlist Patents are directed to a tiered solution of playlist customization in response to the problem of curating content amidst the explosion of digital content that is neither routine nor conventional. Pl.'s Resp. Br. at 13–15. OpenTV avers that claim construction

issues preclude judgment on the pleadings because the parties disagree on the

meaning of the term "social connections." Id. at 18.

Patent eligibility under § 101 is a question of law; however, underlying

factual issues may arise. See Accenture Global Servs. v. Guidewire Software, Inc.,

728 F.3d 1336, 1341 (Fed. Cir. 2013). Although claim construction is not a

prerequisite to a validity determination under § 101, a determination of patent

eligibility "requires a full understanding of the basic character of the claimed

subject matter . . . ." Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat.

Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014), cert denied, 577 U.S. 914, 136 S. Ct.

119 (2015); Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.), 687

F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often

necessary—to resolve claim construction disputes prior to a § 101 analysis, for the

determination of patent eligibility requires a full understanding of the basic

character of the claimed subject matter."). Courts may proceed in analyzing patent

eligibility under § 101 at the pleading stage when a plaintiff fails to explain how

claim construction might alter such analysis. See e.g., CyberFone Sys., LLC v.

Cellco P'ship, 885 F.Supp.2d 710, 715 (D. Del. 2012) (proceeding to rule on § 101

eligibility when plaintiff failed to identify specific claims that would impact the

analysis); Jedi Techs. Inc. v. Spark Networks, Inc., No. 1:16-1055-GMS, 2017 WL

3315279, at *6 (D. Del. Aug. 3, 2017).

At this stage in the litigation, the Court has not engaged in claim construction. OpenTV states that during the oral argument for Pinterest's Second Motion to Dismiss, Pinterest argued that the claims of the Playlist Patents are not directed to a problem unique to the Internet and that the term "social connections" is not limited to connections in the context of the Internet or social media. Pl.'s Resp. Br. at 18; see Oral Argument Trans. (D.I. 36) at 75:7–76:11. OpenTV avers that the specification supports construing the term in the context of online social networking. Pl.'s Resp. Br. at 18 (citing '817 Patent at 6:58–7:33). OpenTV contends that construction of this term is important because it determines whether the Playlist Patents recite a business practice known from the pre-Internet world along with the requirement to conduct it on the Internet, or instead recite a patentable solution based in computer technology that overcomes a unique problem in the realm of computer technology due to its non-conventional and non-routine ordering of the steps. Id. at 18–19. Defendant responds that construction of the term "social connections" would not impact the § 101 analysis because the claims would still fail to recite an improvement in computer capabilities. Def.'s Reply Br. at 8–9.

After examining the available record and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has articulated a specific claim construction issue and that discovery and claim construction would be

beneficial before deciding the eligibility of the Playlist Patents under § 101.  In addition to providing insight on the basic character of the claims and whether they offer a solution unique to the Internet, construction of the claim terms may also resolve further fact questions, including whether the terms, individually or as an ordered combination, are well understood, routine, or conventional.  Although Pinterest avers that a holding of ineligibility is warranted even if the Court adopts OpenTV's construction, it is not clear that this situation is comparable to cases in which the challenged claim is so obvious that formal claim construction is unnecessary, and the Court will not risk adopting a construction that may turn out to be incorrectly unfavorable to a party when compared to the construction that will be adopted after formal claim construction.  See Def.'s Reply Br. at 8–9; see also Execware, LLC v. BJ's Wholesale Club, Inc., C.A. Nos. 14-233-LPS; 14-234-LPS; 14-235-LPS, 14-240-LPS, 2015 WL 5734434, at *2–3 (D. Del. Sept. 30, 2015) (declining to rule on § 101 eligibility when the meaning of the claim language was not obvious from the patent and plaintiff's construction could result in dismissal of defendant's Rule 12 motion).

Accordingly, the Court denies Pinterest's Motion for Partial Judgment on the Pleadings without prejudice to renewal after claim construction of the terms of the Playlist Patents.

## CONCLUSION

Upon consideration of Defendant's Motion for Partial Judgment on the Pleadings (D.I. 39), Plaintiff's Answering Brief in Opposition to Defendant's Motion to for Partial Judgment on the Pleadings (D.I. 45), Defendant's Reply in Support of its Motion for Partial Judgment on the Pleadings (D.I. 49), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (D.I. 39) is denied.

IT IS SO ORDERED this 26th day of November, 2025.


                                    /s/ Jennifer Choe-Groves
                                    Jennifer Choe-Groves
                                    U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.